# **EXHIBIT A**

Electronically Filed by Superior Court of California, County of Orange, 07/16/2024 10:46:00 AM.
30-2024-01410995-CU-NP-CXC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
California Physicians' Service D/B/A Blue Shield of California and Verint Systems Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Kelly Musquiz, individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Civil Complex Center
751 West Santa Ana Blvd., Santa Ana, CA 92701

CASE NUMBER:
*(Número del Caso):*
30-2024-01410995-CU-NP-CXC

**Assigned for All Purposes**
Judge Melissa R. McCormick

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stephen Andrews, 201 Santa Monica Blvd, Suite 600, Santa Monica, CA 90401; 310-656-7066

DATE: 07/16/2024 DAVID H. YAMASAKI, Clerk of the Court
*(Fecha)*
Clerk, by *(Secretario)* A. Burton [signature: Athena Burton], Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* VERINT SYSTEMS INC.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 7/24/24

Electronically Filed by Superior Court of California, County of Orange, 07/02/2024 04:08:25 PM.
30-2024-01410995-CU-NP-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By G. Ramirez, Deputy Clerk.

Stephen Andrews (Cal. Bar No. 354327)
stephen@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

Assigned for All Purposes
Judge Melissa R. McCormick
CX-104

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ORANGE COUNTY**

KELLY MUSQUIZ, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA and VERINT SYSTEMS INC.,

*Defendants.*

Case No. 30-2024-01410995-CU-NP-CXC

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

*General Jurisdiction – Civil*

## Table of Contents

I. Introduction.......... 3
II. Parties.......... 4
III. Jurisdiction and venue.......... 4
IV. Facts. .......... 5
A. Verint makes and sells call monitoring and recording products.......... 5
B. Verint intercepts communications while they are in transit.......... 6
C. Verint uses obtained communications for its own purposes.......... 7
D. Blue Shield uses Verint's call recording and call monitoring software.......... 7
E. Blue Shield's customers expect that their calls are confidential.......... 8
F. Verint and Blue Shield do not obtain consent. .......... 9
G. Plaintiff's communications with Blue Shield were tapped, intercepted, listened to, used, and recorded by Verint without her consent. .......... 9
H. Plaintiff and the class's communications are economically valuable.......... 11
I. No adequate remedy at law.......... 11
V. Class Action Allegations.......... 12
VI. Claims. .......... 13
First Cause of Action: Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631 .......... 13
Second Cause of Action: Violation of the California Invasion of Privacy Act, Cal. Penal Code § 632 .......... 15
Third Cause of Action: Violation of the California Invasion of Privacy Act, Cal. Penal Code § 632.7 .......... 16
Fourth Cause of Action: Invasion of Privacy Under California's Constitution.......... 18
Fifth Cause of Action: Intrusion Upon Seclusion.......... 19
Sixth Cause of Action: Quasi-Contract.......... 20
VII. Relief.......... 20
VIII. Demand For Jury Trial.......... 21

## I. Introduction.

1. Defendant Verint Systems Inc. designs and sells products that monitor and analyze communications between companies and their customers. When customers call companies that use Verint, Verint intercepts the calls, records them, and analyzes the content. Verint's products intercept, listen to, analyze, and record every call between a client and that client's customers. Verint routes every word spoken by callers directly to Verint's servers in real-time, and transcribes these conversations as they occur. Verint also uses its artificial-intelligence models (known as "Verint Da Vinci") to analyze callers' words, tone, pitch, and pace, to determine what the caller is talking about and how the caller is feeling.

2. In addition to listening in and recording the calls, Verint uses the communications for its own purposes. For example, Verint can use the conversations to enhance and develop its own products, and train its own AI models.

3. Defendant California Physicians' Service d/b/a Blue Shield of California ("Blue Shield") uses many Verint products, including Speech Analytics. When a customer calls Blue Shield to find a provider or pharmacy, reach customer service, or file a medical claim, the call is intercepted and recorded by Verint.

4. Because Blue Shield is an insurance company, customers calling Blue Shield routinely share some of the most intimate details of their lives, like their struggles with cancer, their battles with mental health and addiction, their worries about affording life-saving treatments, and their fear of chronic pain and death. Customers expect these conversations to remain confidential. But, in fact, the conversations are intercepted, listened to, recorded, and used by Verint. Neither Verint nor Blue Shield discloses that fact to customers. And they do not obtain customer consent for Verint to intercept, eavesdrop, record, and use the contents of the call.

5. Plaintiff Kelly Musquiz is a member of Blue Shield. She has called Blue Shield multiple times. In those calls, Ms. Musquiz disclosed sensitive personal and medical information. Ms. Musquiz expected that her conversations with Blue Shield would be kept confidential. She did not know that Verint was secretly listening to her conversation, and she did not consent to her

conversations being intercepted, listened to, recorded, and used by Verint. She would not have called Blue Shield if she had known.

6. Plaintiff brings this action on behalf of herself and other customers whose calls were intercepted, listened to, recorded, and used by Verint without their consent.

**II. Parties.**

7. Plaintiff Kelly Musquiz is domiciled in Anaheim, California. She has been a Blue Shield member since January 2023. Since then, she has spoken with Blue Shield numerous times, and each time she has discussed sensitive healthcare information. Ms. Musquiz expected those conversations to remain confidential between herself and Blue Shield. During each of these calls, Ms. Musquiz's communications were listened to, intercepted, and recorded in real time by Defendant Verint Systems Inc. Ms. Musquiz was unaware at the time of these calls that her communications were being intercepted in real-time by Verint for its own use, nor did Ms. Musquiz consent to the same.

8. Defendant California Physicians' Service (doing business as Blue Shield of California) is a California corporation with its principal place of business in Oakland, California. Blue Shield is a health-plan provider offering a variety of health-insurance products. Blue Shield is an independent member of the Blue Shield Association and serves individuals, families, and employers across California. Blue Shield of California provides coverage to approximately 4.5 million members in the State.

9. Defendant Verint Systems Inc. is a Delaware corporation with its principal place of business at 175 Broadhollow Road, Melville, New York 11747. Verint is a global analytics company that specializes in customer engagement and business-intelligence solutions. Verint enables organizations to capture and analyze large amounts of customer data. Verint provides various call monitoring and recording products. At all relevant times here, Blue Shield has used Verint's call recording and call monitoring software.

**III. Jurisdiction and venue.**

10. This Court has subject-matter jurisdiction over this class action. This Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and

each Defendant has systematically and continually conducted business in California and purposefully availed themselves of the laws and benefits of doing business in this State, and a substantial portion of the events giving rise to Plaintiff's claims occurred in this County. Furthermore, Plaintiff's claims arise out of the Defendants' forum-related activities. Due to Defendants' actions, Plaintiff was harmed in California.

11. This Court is the proper venue for this action under the California Code of Civil Procedure § 395.5 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this County.

11. Further, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

**IV. Facts.**

**A. Verint makes and sells call monitoring and recording products.**

12. Defendant Verint makes and sells a wide-range of software products that enable companies to tap, intercept, listen to, use, record, and analyze customer phone calls.

13. For example, Verint's "Speech Analytics" product listens to and analyzes voice interactions between a company and its customers. Speech Analytics is powered by Verint Da Vinci—Verint's artificial-intelligence models. Using Da Vinci, Speech Analytics transcribes, analyzes, and derives actionable insights from customer conversations in real time. Speech Analytics transcribes and records 100% of calls in real time, as those calls occur. Speech Analytics uses Da Vinci AI to analyze words, phrases, categories, and themes that affect customer experience. Speech Analytics also analyzes the words customers use, as well as their tone, pitch, and pace of speech, to determine the sentiment and emotional state of customers and agents.

14. Verint's "Real-Time Agent Assist" is another call monitoring and recording product. When a customer calls customer service, Real-Time Agent Assist listens to customers' conversations with contact-center agents in real-time and uses AI to notify and assist employees and supervisors about ways to handle telephone calls.

15. Real-Time Agent Assist is also powered by Verint Da Vinci. Using Da Vinci, Real-Time Agent Assist precisely transcribes conversations as they happen. In addition to capturing the content of the conversations, Verint also captures callers' tone, pitch, pace, and other acoustic signatures. Verint then processes customers' words and acoustic signatures to determine customers' emotions and sentiments. Based on the customers' words and acoustic signatures, Real-Time Agent Assist then suggests actions that call-center agents can take and informs agents how customers are feeling.

16. Verint provides the example of a customer calling a customer-service line and asking to change their address. Verint intercepts the call in real-time, processes the customer's words, and immediately provides the call-center agent with information on how to respond to the customer's request.[1] As the conversation progresses, Real-Time Agent Assist informs the agent how the customer is feeling, noting for example that the customer seems upset.

17. Verint intentionally and willfully intercepts consumer communications. Verint designed its products to intercept customer communications, and Verint touts that feature to its customers. The purpose of Verint's call monitoring and recording software (such as Speech Analytics and Real-Time Agent Assist) is to intercept customer communications. And, when Verint sells these products to companies and other entities, Verint intends for its product to intercept customers' communications.

**B. Verint intercepts communications while they are in transit.**

18. When a customer calls a company that uses Verint's call monitoring and recording products (such as Speech Analytics or Real-Time Agent Assist), the call is simultaneously disseminated to both the company's call-center and Verint.

19. Companies using Verint's call monitoring and recording products (such as Speech Analytics or Real-Time Agent Assist) embed Verint-provided code into their call centers or into third-party communication platforms. When a customer uses a telephone to call the company, the embedded code routes the customer's words and acoustic signatures (i.e., their communications) directly to Verint. Verint's Speech Analytics and Real-Time Agent Assist services are an

[1] https://www.youtube.com/watch?v=3_hzJrJ2E8s

Application Programming Interface (API) that is "plugged in" to the contact center (and, by extension, into each and every phone call). Speech Analytics, Real-Time Agent Assist, and other Verint call monitoring and recording products are run from Verint's servers. In other words, Verint intercepts customer communications as those communications occur and then transcribes, analyzes, and stores those communications on its own servers in real time.

20. Thus, Verint learns the contents and meaning of the communications while the communications are in transit.

**C. Verint uses obtained communications for its own purposes.**

21. Verint uses data obtained by its call monitoring and recording products (such as Speech Analytics and Real-Time Agent Assist) for its own purposes. For example, Verint's Da Vinci AI models are trained on at least a sub-set of customer engagement data and real-time data that flows through Verint's products.

22. In addition, Verint uses at least a sub-set of customer data for Verint's internal business purposes, including for improving or creating enhancements to (or new offerings related to) Verint's services.

**D. Blue Shield uses Verint's call recording and call monitoring software.**

23. On its website, Verint advertises that Blue Shield of California is one of its customers.

24. Blue Shield uses Verint's products to record and monitor calls. For example, on a TrustRadius review,[2] Yvette Core—a longtime Blue Shield employee who supervised Blue Shield's Speech Analytics department for over two years—admits that Blue Shield uses Verint's Speech Analytics in a wide variety of calls, including when members are searching for providers, reaching out to customer service, and filing medical claims.[3]

25. Blue Shield intentionally installed Verint's products with knowledge that those products would intercept and record callers' conversations. Blue Shield hired Verint specifically to

---

[2] https://www.youtube.com/watch?v=GpiEKkRpY2M

[3] The full extent of Blue Shield's use of Verint's call monitoring and recording products (i.e., a complete list of Verint products that Blue Shield uses) is not publicly known.

intercept communications, and Blue Shield facilitated Verint embedding its code into Blue Shield's call centers.

26. As described in further detail above, Verint taps, intercepts, listens to, receives, records, and uses the contents and meaning of the messages while the messages are in transit.

27. Blue Shield knows that Verint uses communications it collected via its call monitoring and recording products (such as Speech Analytics and Real-Time Agent Assist) to advance its own business interests, because Verint's contract says that it can do so.

**E. Blue Shield's customers expect that their calls are confidential.**

28. Customers who call Blue Shield have a reasonable expectation of privacy. They dial (or receive a call from) a phone number associated with Blue Shield and reasonably believe that they are having a conversation with Blue Shield. They do not expect that a third party is listening in and recording the conversation.

29. In addition, because Blue Shield is an insurance company, individuals calling Blue Shield virtually always discuss the most intimate and personal information in their lives, including sensitive financial and health information. In a typical call, a caller is likely to disclose a wide variety of personally identifiable information (PII), sensitive financial information, and sensitive healthcare information, including, but not limited to:

a. Name;
b. Address;
c. Confidential medical information;
d. Healthcare information;
e. Credit Card Numbers; and
f. Financial Information, such as the amount of money available to them.

30. Because the callers disclose sensitive personal, financial, and healthcare information in the call, they reasonably expect that this information will be kept private.

**F. Verint and Blue Shield do not obtain consent.**

31. Callers who call Blue Shield do not consent to their calls with Blue Shield being tapped, intercepted, listened to, eavesdropped on, recorded, and used by Verint. Neither Verint nor Blue Shield obtain consent from consumers who call Blue Shield.

32. Blue Shield does not obtain consent. Defendant Blue Shield does not ask callers whether they consent to Verint learning the contents of, eavesdropping on, intercepting, or recording their calls. Blue Shield customers are thus unaware that Verint is listening.

33. When callers call Blue Shield, they are informed that the call "may be recorded for quality assurance purposes." This tells reasonable consumers that Blue Shield itself may use the recording to train its customer service agents or improve its products. It does not tell reasonable consumers that a third-party (Verint) will intercept, record, and use the call for its own purposes. In fact, callers are unaware that any third-party is present on the call. Callers call Blue Shield's number, and at all times it appears that the call is strictly between the caller and Blue Shield. It is never disclosed that a third party is listening, or using the content of its call for its own products and purposes.

34. Verint also does not obtain consent. Verint does not disclose on the Blue Shield calls that it is intercepting, listening to, recording, or using the information disclosed in the call. Customers are thus unaware that Verint is listening in on the call, and they do not consent.

35. Companies using Verint's call monitoring and recording products (such as Speech Analytics and Real-Time Agent Assist) are substantially similar such that Plaintiff can serve as a class representative for all customers whose calls were recorded and used by Verint's call monitoring and recording products without consent. *See, e.g., In re Vizio, Inc. Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1219 (C.D. Cal. 2017). Each company using Verint's call monitoring and recording products enables Verint to intercept, listen to, learn the contents of, eavesdrop on, and/or record callers' verbal and acoustic signatures.

**G. Plaintiff's communications with Blue Shield were tapped, intercepted, listened to, used, and recorded by Verint without her consent.**

36. Plaintiff Musquiz has been a member of Blue Shield since 2023.

37. Since 2023, Ms. Musquiz has called Blue Shield numerous times. Most recently, she called Blue Shield on June 3, 2024.

38. Each time, Ms. Musquiz called a Blue Shield phone number from her smartphone. Ms. Musquiz made the phone calls in private, without other people around her. During these conversations, Ms. Musquiz discussed sensitive medical information, including information about her health, healthcare providers, and pharmacies.

39. At no time did Plaintiff consent to Verint tapping, intercepting, listening to, learning the contents of, using, eavesdropping on, or recording the content of her phone calls.

40. Ms. Musquiz had a reasonable expectation that the conversations were not being overheard or recorded by any third parties. Ms. Musquiz had a reasonable expectation of privacy because her conversations occurred in private between her and Blue Shield, and because those conversations concerned confidential healthcare information as well as other sensitive personal information. A reasonable caller in Ms. Musquiz's position would have expected calls with Blue Shield to remain confidential, because people expect private healthcare and personal information to remain private.

41. During those calls, Verint's call monitoring and recording products secretly captured Ms. Musquiz's conversations, transcribing her words and capturing her acoustic signatures in real-time without her consent.

42. Ms. Musquiz was harmed because her right to privacy was violated.

43. Plaintiff faces an imminent threat of future harm. As she has for years, Plaintiff would like to call Blue Shield to find providers and to obtain information about her medical coverage, amongst other reasons. But Plaintiff does not consent and does not want Verint to intercept, listen to, use, and record her communications with Blue Shield, so she cannot call Blue Shield without fear of this occurring. Without an injunction, Plaintiff has no way of knowing whether or not Verint is intercepting and using her calls with Blue Shield without her consent.

44. At the time that Plaintiff made her phone calls, she did not know that Verint (a third-party) was intercepting, listening to, recording, and using her phone calls with Blue Shield. She did not know that Verint (or any other party except Blue Shield) was listening to or recording her phone

calls with Blue Shield. She did not discover it until June 2024, when she learned that Verint records calls made to Blue Shield.

45. Plaintiff could not have made earlier discovery despite exercising reasonable diligence. At no time during her calls did Blue Shield disclose to Plaintiff (or other consumers) that Verint was secretly monitoring and recording the calls. Likewise, nowhere does Blue Shield's website disclose that Verint may be tapping, intercepting, listening to, recording, monitoring, or analyzing calls that she made to Blue Shield. Indeed, there was no indication that *any* third party was eavesdropping on Plaintiff's calls with Blue Shield.

**H. Plaintiff and the class's communications are economically valuable.**

46. Plaintiff and the Class Members' conversations with Defendant Blue Shield are economically valuable. This information—which includes personal and healthcare information, as well as verbal and acoustic information—is a form of currency. The value is well understood in the e-commerce industry.

47. Professor Paul M. Schwartz noted in the Harvard Law Review:

> Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.

Paul M. Schwartz, *Property, Privacy and Personal Data*, 117 HARV. L. REV. 2055, 2056-57 (2004).

48. Additionally, Plaintiff and the Class Members' conversations are used to train Verint's AI models, which increases the value of Verint's products. Verint acknowledges the economic value of training its AI on customer data, touting publicly that its AI is the best product, because it has been trained on customer-engagement data, which has been collected for more than twenty years, as well as from the real-time data that flows through Verint's products.

**I. No adequate remedy at law.**

49. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

50. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as

Plaintiff's legal claims. Plaintiff's quasi-contract claim requires only that Plaintiff establish Defendants' receipt of a benefit and an unjust retention of that benefit at Plaintiff's expense. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail, while not being able to prove one or more elements of her legal claims.

51. In addition, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## V. Class Action Allegations.

52. Plaintiff brings the asserted claims for the following classes:

- Verint Class: all California residents who called or were called by a company that uses Verint's call monitoring and recording products, and who did not consent to Verint intercepting, listening to, and/or recording the call.
- Blue Shield Subclass: all California residents who called or were called by Blue Shield while Blue Shield used Verint's call monitoring and recording products.

53. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

54. Members of each class are so numerous that their individual joinder herein is impracticable. There are thousands of Class Members or more.

55. Class Members can be identified through Defendants' call records and public notice.

### Predominance of Common Questions

56. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a. Whether Defendants violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631;

b. Whether Defendants violated CIPA, Cal. Penal Code § 632;

c. Whether Defendants violated CIPA, Cal. Penal Code § 632.7;

d. Whether Defendants invaded Plaintiff's privacy rights in violation of the California Constitution;

e. Whether Defendants intruded upon Plaintiff's seclusion;

f. Whether Defendants were unjustly enriched; and

g. Damages needed to compensate Plaintiff and the proposed classes.

**Typicality & Adequacy**

57. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, had her telephonic communications intercepted, listened to, and recorded for use by Verint, without her consent. There are no conflicts of interest between Plaintiff and the classes.

**Superiority**

58. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**<u>First Cause of Action:</u>**

**Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631**

**(Against Both Defendants)**

59. Plaintiff incorporates each and every factual allegation set forth above.

60. Plaintiff brings this cause of action against Verint on behalf of herself and members of the Verint Class. In the alternative, Plaintiff brings the claim against Verint on behalf of herself and the Blue Shield Subclass.

61. Plaintiff brings this cause of action against Blue Shield on behalf of the Blue Shield Subclass.

62. To establish liability under section 631(a), Plaintiff need only establish that Defendants, "by means of any machine, instrument, contrivance, or in any other manner, did any of the following:

> [1] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state;
>
> or
>
> [3] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained;
>
> or
>
> [4] aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

63. As described in further detail above, Defendant Verint intentionally tapped, or otherwise made an unauthorized connection, with Plaintiff and Blue Shield's telephonic wire line, cable or instrument.

64. As described in further detail above, Defendant Verint also willfully and without Plaintiff's consent read, attempted to read, or to learn the contents of Plaintiff's calls while those communications were in transit over a wire, line, or cable.

65. As described in further detail above, Defendant Verint uses and attempts to use the information so obtained.

66. The following constitutes a "machine, instrument, contrivance," or "other manner" under the statute:

a. The computers Defendant Verint uses to carry out the wiretapping;
b. Verint's call monitoring and call recording software, such as Speech Analytics and Real-Time Agent Assist software;
c. The servers Verint uses to process the data;
d. Plaintiff's telephone line;
e. Defendant Blue Shield's telephone line; and/or
f. The plan Verint carried out to achieve its wiretapping of Plaintiff's communications.

67. As described in further detail above, Plaintiff and Class Members did not expressly or impliedly consent.

68. As described in greater detail above, Blue Shield aids, agrees, and employs Defendant Verint to wiretap and eavesdrop on Plaintiff's communications.

69. Plaintiff and the Verint Class were injured as a direct and proximate result of Defendants' conduct, including because their right to privacy was invaded in violation of Cal. Penal Code § 630 *et seq.*

70. Plaintiff seeks actual or statutory damages of $5,000 per violation per class member, whichever is greater, reasonable attorneys' fees, treble damages, and all other available relief.

## <u>Second Cause of Action:</u>

## Violation of the California Invasion of Privacy Act, Cal. Penal Code § 632

## (Against Verint)

71. Plaintiff incorporates each and every factual allegation set forth above.

72. Plaintiff brings this cause of action on behalf of herself and members of the Verint Class against Defendant Verint. In the alternative, Plaintiff brings this claim on behalf of herself and the Blue Shield Subclass.

73. Section 632 of California's Penal Code imposes liability upon anyone "who, [1] intentionally and [2] without the consent of all parties to [3] a confidential communication, [4] uses an electronic amplifying or recording device [5] to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio[.]"

74. As described in greater detail above, Defendant Verint intentionally eavesdropped upon and/or recorded Plaintiff and Class Members' conversations.

75. Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant Verint's eavesdropping.

76. Plaintiff and Class Members had a reasonable expectation of privacy in their (1) private healthcare information; (2) private telephone calls; and/or (3) personal information.

77. Defendant Verint's computer systems, software, telephone systems, servers, and the other devices that Defendant Verint uses to carry out its wiretapping scheme are electronic amplifying and/or recording devices.

78. Plaintiff and the class's communications occurred by means of a telephone, or other device, and not by radio.

79. Plaintiff and the Verint Class were injured as a direct and proximate result of Verint's conduct, including because their right to privacy was invaded in violation of Cal. Penal Code § 630 *et seq*.

80. Plaintiff seeks actual or statutory damages of $5,000 per violation per class member, whichever is greater, reasonable attorneys' fees, treble damages, and all other available relief.

**<u>Third Cause of Action:</u>**

**Violation of the California Invasion of Privacy Act, Cal. Penal Code § 632.7**

**(Against Both Defendants)**

81. Plaintiff incorporates each and every factual allegation set forth above.

82. Plaintiff brings this cause of action against Verint on behalf of herself and members of the Verint Class. In the alternative, Plaintiff brings this claim on behalf of herself and the Blue Shield Subclass.

83. Plaintiff brings this cause of action against Blue Shield on behalf of herself and the Blue Shield Subclass.

84. Section 632.7 of California's Penal Code imposes liability upon anyone "who, [1] without the consent of all parties to a communication, [2] intercepts or receives and intentionally records, or assists in the interception or reception and intentional recorded of, [3] a communication [4] transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

85. As discussed in greater detail above, Defendant Verint intercepted and/or received and intentionally recorded Plaintiff's and the Class Members' calls.

86. Plaintiff and the Class Members did not expressly or impliedly consent to Defendant Verint intercepting and/or receiving and recording their calls.

87. Plaintiff and the Class Members communicated with customer service using a phone (such as a cellular radio phone, landline, and/or cordless phone), and Defendant Blue Shield answered Plaintiff and the Class Members' calls with a phone (such as a cellular radio telephone, a cordless telephone, and/or landline telephone).

88. As described in greater detail above, Defendant Blue Shield assisted Defendant Verint in intercepting and/or receiving and intentionally recording Plaintiff and the Class Members' calls.

89. Plaintiff and the Verint Class were injured as a direct and proximate result of Defendants' conduct, including because their right to privacy was invaded in violation of Cal. Penal Code § 630 *et seq*.

90. Plaintiff seeks actual or statutory damages of $5,000 per violation per class member, whichever is greater, reasonable attorneys' fees, treble damages, and all other available relief.

**Fourth Cause of Action:**

**Invasion of Privacy Under California's Constitution**

**(Against Both Defendants)**

91. Plaintiff incorporates each and every factual allegation set forth above.

92. Plaintiff brings this cause of action against Verint on behalf of herself and members of the Verint Class. In the alternative, Plaintiff brings this claim on behalf of herself and the Blue Shield Subclass.

93. Plaintiff brings this cause of action against Blue Shield on behalf of herself and the Blue Shield Subclass.

94. Plaintiff and Class Members have an interest in (1) precluding the dissemination and/or misuse of their private healthcare information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to call their insurance company without being subjected to wiretaps without Plaintiff and Class Members' knowledge or consent.

95. At all relevant times, by implementing Defendant Verint's wiretaps on Defendant Blue Shield's phone lines, each Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution, and each procured the other Defendant to do so.

96. Plaintiff and Class Members had a reasonable expectation of privacy in their (1) private healthcare information; (2) private telephone calls; and (3) personal information.

97. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing Verint's wiretaps.

98. The invasion of privacy is serious in nature, scope, and impact.

99. The invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

100. Plaintiff and the class were injured as a direct and proximate result of Verint's conduct, including because their right to privacy was invaded.

101. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

**<u>Fifth Cause of Action:</u>**

**Intrusion Upon Seclusion**

**(Against Both Defendants)**

102. Plaintiff incorporates each and every factual allegation set forth above.

103. Plaintiff brings this cause of action against Verint on behalf of herself and members of the Verint Class. In the alternative, Plaintiff brings this claim on behalf of herself and the Blue Shield Subclass.

104. Plaintiff brings this cause of action against Blue Shield on behalf of herself and the Blue Shield Subclass.

105. Plaintiff and Class Members have an interest in (1) precluding the dissemination and/or misuse of their private healthcare information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to call their insurance company without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

106. At all relevant times, by implementing Defendant Verint's wiretaps on Defendant Blue Shield's phone lines, each Defendant intruded into a private place, conversation, or matter, and procured the other Defendant to do so.

107. Plaintiff and Class Members had a reasonable expectation of privacy in their (1) private healthcare information; (2) private telephone calls; and (3) personal information.

108. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing Verint's wiretaps.

109. The invasion of privacy is serious in nature, scope, and impact.

110. The invasion of privacy alleged here occurred in a manner highly offensive to a reasonable person.

111. Plaintiff and the Verint Class were injured as a direct and proximate result of Defendants' conduct, including because their right to privacy was violated.

112. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

**Sixth Cause of Action:**

**Quasi-Contract**

**(Against Both Defendants)**

113. Plaintiff incorporates each and every factual allegation set forth above.

114. Plaintiff brings this cause of action against Verint on behalf of herself and members of the Verint Class. In the alternative, Plaintiff brings this claim on behalf of herself and the Blue Shield Subclass.

115. Plaintiff brings this cause of action against Blue Shield on behalf of herself and the Blue Shield Subclass.

116. Defendants received data and information contained in Plaintiff and the Class Members' calls with Defendant Blue Shield.

117. That data and information is economically valuable to Defendants.

118. Plaintiff and Class Members received no compensation for that data and information.

119. In this way, Defendants received a direct and unjust benefit, at Plaintiff and Class Members' expense.

120. Plaintiff and the class seek restitution.

**VII. Relief.**

121. Plaintiff seeks the following relief for herself and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, statutory damages, treble damages, and punitive damages where applicable;
- Restitution;
- Imposition of a constructive trust;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII. Demand For Jury Trial

122. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: July 2, 2024

Respectfully submitted,

By: ____________________

Stephen Andrews (Cal. Bar No. 354327)
stephen@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

Electronically Filed by Superior Court of California, County of Orange, 07/02/2024 04:08:25 PM.
30-2024-01410995-CU-NP-CXC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By G. Ramirez, Deputy Clerk.

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Stephen Andrews (Cal. Bar No. 354327)
201 Santa Monica Blvd, Suite 600, Santa Monica, CA 90401

TELEPHONE NO.: (310) 656-7066 FAX NO.: (310) 656-7069
EMAIL ADDRESS: stephen@dovel.com
ATTORNEY FOR *(Name):* Plaintiff Kelly Musquiz

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 751 West Santa Ana Blvd.
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Civil Complex Center

CASE NAME:
Kelly Musquiz v. California Physicians' Service and Verint Systems Inc.

## CIVIL CASE COVER SHEET

[X] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

## Complex Case Designation

[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 30-2024-01410995-CU-NP-CXC
JUDGE: Judge Melissa R. McCormick
DEPT.: CX-104

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[X] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* 6
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 2, 2024
Stephen Andrews
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ORANGE**

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

**BENEFITS OF ADR.**

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

**DISADVANTAGES OF ADR.**

ADR may not be suitable for every dispute.

**Loss of protections.** If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

**Less discovery.** There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.** The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.** Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

**TYPES OF ADR IN CIVIL CASES.**

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.** In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate.** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate.** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.** In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate.** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate.** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.** In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.** Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate.** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.** Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:

- Community Service Programs, Inc. (949) 250-4058
- Orange County Human Relations (714) 480-6572

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*:<br><br>Telephone No.: Fax No. (Optional):<br>E-Mail Address (Optional):<br>ATTORNEY FOR *(Name)*: Bar No: | *FOR COURT USE ONLY* |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), ______________________________

______________________________

and defendant(s)/respondent(s), ______________________________

______________________________

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
☐ Under section 1141.11 of the Code of Civil Procedure
☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: ______________ ______________________ ______________________
(SIGNATURE OF PLAINTIFF OR ATTORNEY) (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: ______________ ______________________ ______________________
(SIGNATURE OF DEFENDANT OR ATTORNEY) (SIGNATURE OF DEFENDANT OR ATTORNEY)